IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | FILED: JULY 22, 2008 |
| | ) | Case No. 08CV4158 |
| Plaintiff, | ) | JUDGE GOTTSCHALL |
| vs. | ) | **COMPLAINT**  MAGISTRATE JUDGE MASON |
| | ) | |
| JAMES W. CLARK, and | ) | TC |
| LEROY E. DRURY, | ) | |
| | ) | |
| Defendants. | ) | |

The United States of America, by the authority of the Attorney General of the United States of America and through the undersigned attorneys, acting at the request of and on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), files this Complaint and alleges as follows:

## NATURE OF THE ACTION

1.  This is a civil action for recovery of costs under Section 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. §§ 9601-9675, as amended by the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499, 100 Stat. 1613 (1986) ("CERCLA"), 42 U.S.C. § 9607(a). The United States seeks to recover response costs it has incurred in connection with the facility known as the South Green Plating Superfund Site (the "Site"), located at 12130 South Green Street and 12139 South Peoria Street, Chicago, Cook County, Illinois. The United States also seeks a declaratory judgment under Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), that James W. Clark is liable for any future response costs incurred by the United States in connection with the Site.

2.  The United States also seeks civil penalties under Section 104(e)(5)(B)(ii) of CERCLA, 42 U.S.C. § 9604(e)(5)(B)(ii), as amended by the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, and the Debt Collection Improvement Act of

1996, 31 U.S.C. § 3701, 69 Fed. Reg. 7121-27 (February 13, 2004), against Defendants James W. Clark and Leroy E. Drury for unreasonably failing to comply with information requests issued by EPA pursuant to Section 104(e)(5)(B) of CERCLA, 42 U.S.C. § 9604(e)(5)(B).

## JURISDICTION AND VENUE

3.  This Court has jurisdiction over the subject matter of this action and the Defendants pursuant to Sections 104(e)(5)(B), 107(a), and 113(b) of CERCLA, 42 U.S.C. §§ 9604(e)(5)(B), 9607(a), and 9613(b), and pursuant to 28 U.S.C. §§ 1331 and 1345.

4.  Venue is proper in this district pursuant to Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), and pursuant to 28 U.S.C. § 1391(b) and (c) because the actual or threatened release of hazardous substances giving rise to this claim occurred in this district, and because the Site is located in this district.

## THE DEFENDANTS

5.  Defendant James W. Clark ("Mr. Clark") is an individual residing in the State of Illinois. Mr. Clark was an operator at the Site at a time of disposal of hazardous substances. Mr. Clark was doing business as Temper Tough, Inc. ("TTI") and JC Enterprises, a sole proprietorship. Mr. Clark also failed to comply with an information request issued by EPA pursuant to Section 104(e)(5)(B) of CERCLA, 42 U.S.C. § 9604(e)(5)(B).

6.  Defendant Leroy E. Drury ("Mr. Drury") is an individual residing in the State of Illinois and was the Registered Agent for TTI. Mr. Drury failed to adequately respond to an information request issued by EPA pursuant to Section 104(e)(5)(B) of CERCLA, 42 U.S.C. § 9604(e)(5)(B), and failed to respond entirely to a second information request issued by EPA pursuant to Section 104(e)(5)(B) of CERCLA, 42 U.S.C. § 9604(e)(5)(B).

## SITE OVERVIEW AND GENERAL BACKGROUND

7.  The South Green Plating Site (the "Site") is a former metals heat treating facility containing a one-story building located at 12130 South Green Street (the "Green Street property") and a second one-story building located at 12139 Peoria Street (the "Peoria

Street property") in Chicago, Cook County, Illinois. The properties are identified by Cook County with the tax identification parcel numbers 25-29-209-043 and 25-29-209-047.

8. The Site is approximately one acre in size and is located in a primarily residential area bordered by railroad tracks to the north, residences to the east and south, and commercial property to the west.

9. Subject to the reasonable opportunity for further investigation and discovery, in February 1993, the owner of the Site, Calumet Heat Treating Corporation ("CHTC"), through acting president Thomas G. Cooper, permitted Mr. Clark to operate a metals heat treating business at the Site.

10. From approximately February 1993 until December 2003, Mr. Clark conducted operations at the Site as TTI, an Illinois corporation consisting of Mr. Clark and two other officers, and JC Enterprises, a sole proprietorship. By the end of 2003, Mr. Clark had abandoned both the Green Street and Peoria Street properties.

11. The City of Chicago acquired the Site in two separate tax delinquency sales, acquiring the Green Street property on April 23, 2002 and the Peoria Street property on February 10, 2005.

12. In August, 2002, the City of Chicago's Department of Environment ("CDOE") was contacted by Chicago's Department of Planning and Development for assistance with waste materials at the newly acquired Green Street property.

13. CDOE responded by retaining Heritage Environmental Services, LLC ("Heritage") to assess the waste materials at the Green Street property.

14. Upon arrival at the Site, Heritage determined that the facility appeared to be an abandoned plating operation with waste materials left behind in process tanks and drums. Heritage also discovered a large pit under the metals process line filled with approximately 64,000 gallons of quenching oil from former operations.

15. Sampling analysis conducted by Heritage indicated that the wastes consisted of a variety of materials such as oil and water liquid mixtures, cyanide, paints, grease, flammable liquids, corrosive and caustic liquids, caustic solids, and chromic acid liquids.

16. CDOE subsequently referred the Site to EPA on June 27, 2003 for assistance with removal activities.

## STATUS OF CLEANUP PROCESS

17. On October 6, 2004, the Superfund Technical Assessment and Response Team ("START") conducted site reconnaissance. START observed evidence of leaking drums and containers, and two large underground pits containing materials of unknown contents.

18. Analytical results for samples collected at the Site by START during the initial site reconnaissance indicated the presence of heavy metals including, barium, cadmium, chromium, and lead, as well as cyanides and corrosive and caustic liquids, which are hazardous substances within the meaning of CERCLA Section 101(14), 42 U.S.C. § 9601(14).

19. Based on the findings described above, EPA determined, pursuant to Section 104(a) of CERCLA, 42 U.S.C. § 9604(a), that releases or threats of release into the environment of hazardous substances at or from the Site presented an imminent and substantial endangerment to the public health or welfare.

20. Accordingly, EPA issued an action memorandum for a time-critical removal action at the Site on April 11, 2005.

21. EPA mobilized at the Site to commence removal activities on May 16, 2005.

22. EPA's investigation revealed that the Green Street property contained drums and containers of chlorinated solvents, corrosive acidic liquids, flammable liquids, and paint waste. Dust from the floor of the building contained cyanide, barium, chromium, cadmium, and lead. In addition, bricks from around the furnaces contained chromium, and polychlorinated biphenyls ("PCBs") were discovered in a large pit under the process line.

23. Moreover, the building itself was in poor condition and had cracked floors and broken windows, providing an augmented path of exposure to the outside environment.

24. On July 20, 2005, EPA was informed that the City of Chicago had acquired the Peoria Street property adjacent to the Green Street property. Therefore, the Peoria Street property was also investigated and found to contain approximately ten furnaces contaminated with chromium, as well as some sludge materials in at least one tank.

25. The removal action was subsequently expanded to include the Peoria Street property.

26. During the Site's removal action, EPA removed a total of 2,568 gallons of PCB-containing oil and 16,360 pounds of chromium and cyanide waste solids. EPA additionally removed approximately 2,535 gallons of waste materials, including: 990 gallons of acidic waste corrosive liquid (sulfuric acid, nitric acid); 550 gallons of waste flammable liquids (methyl ethyl ketone, toluene); 5 gallons of waste mercury; 220 gallons of waste paint; 605 gallons of basic waste corrosive liquid (sodium hydroxide, cyanide); 110 gallons of waste sodium hydroxide; and 55 gallons of waste PCB liquid.

27. Removal activities at the Site were completed on or about July 28, 2005.

28. Cyanide, barium, chromium, cadmium, lead, PCBs, quenching sludge, methyl ethyl ketone, toluene, sodium hydroxide, sulfuric acid, and nitric acid are all "hazardous substances" within the meaning of Sections 101(14) and 107(a) of CERCLA, 42 U.S.C. §§ 9601(14) and 9607(a).

29. U.S. EPA has incurred costs to mitigate releases or threats of releases of hazardous substances at the facility pursuant to Sections 104 and 107 of CERCLA, 42 U.S.C. §§ 9604 and 9607.

30. As of March 31, 2008, EPA has incurred approximately $527,998.95 in total unrecovered costs at the Site. Since that date, the United States has continued to incur additional costs.

## JAMES W. CLARK

A. **CERCLA Section 107(a) Operator Liability**

31. In 1993, the owner of the Site, Calumet Heat Treating Corporation ("CHTC"), through acting president Thomas G. Cooper, permitted Mr. Clark to begin operating a metals heat treating business at the Site. Subject to the reasonable opportunity for further investigation and discovery, this arrangement was never reduced to writing; therefore, Mr. Clark began doing business at the Site as Temper Tough, Inc. ("TTI") and JC Enterprises, a sole proprietorship, pursuant to an oral agreement in February 1993.

32. TTI was a company incorporated in 1991 that had three officers: Ance D. Lee, principal and former president who passed away in 2006; Leroy E. Drury, the company's registered agent; and, James W. Clark, chief executive who managed operations at the Site.

33. The company was involuntarily dissolved in 1999 by the State of Illinois for failure to pay corporate franchise taxes.

34. From 1993 to December 2003, Mr. Clark managed and conducted the daily operations of TTI and JC Enterprises at the Site, making all operational executive decisions, including, but not limited to, decisions regarding the financial affairs of the companies, employee management, and production.

35. Subject to the reasonable opportunity for further investigation and discovery, Mr. Clark also had complete control over decisions relating to environmental matters, including the use and disposal of hazardous substances at the Site. For example, Mr. Clark routinely purchased heat treating products such as quenching oils and cyanide used in his metals businesses.

36. In fact, according to purchasing records from one of his chemical suppliers, Mr. Clark personally ordered cyanide products to be shipped to the Site in the course of the metals business operations at the Site from as early as 1992 continuing until 2003.

37. Mr. Clark continued doing business as JC Enterprises even after TTI was dissolved until abandoning his operations at the Green Street property by approximately 2002 and the Peoria Street property by approximately 2004, leaving hazardous substances on-site.

**B.   CERCLA Section 104(e) Violation**

38. By letter dated June 9, 2006, EPA, through Ms. Linda M. Nachowicz, Chief, Emergency Response Branch, Region 5, issued to Mr. Clark an information request pursuant to Section 104(e) of CERCLA, 42 U.S.C. § 9604(e), ("Clark Information Request") concerning the nature and quantity of hazardous substances at the Site.

39. On June 27, 2006, U.S. EPA delivered the Clark Information Request by hand to Mr. Clark.

40. Mr. Clark failed to respond to the Clark Information Request by the original deadline of July 11, 2006.

41. On two occasions, July 12, 2006 and September 11, 2006, Mr. Clark indicated that he planned to respond to the Clark Information Request, but needed an extension. Accordingly, EPA extended Mr. Clark's response deadlines on two separate occasions until August 11, 2006 and subsequently until September 20, 2006, yet Mr. Clark never responded to the Clark Information Request.

42. On January 25, 2007, EPA issued a certified letter to Mr. Clark notifying him of the potential penalties for his continued failure to respond to the Clark Information Request.

43. The letter remained unclaimed after three attempted deliveries by the U.S. Postal Service.

44. To date, Mr. Clark has failed to respond to EPA's Clark Information Request, or present any basis for his continued failure to respond.

## LEROY E. DRURY

### CERCLA Section 104(e) Violation

45. By letter dated April 16, 2005, EPA, through Ms. Linda M. Nachowicz, Chief, Emergency Response Branch, Region 5, issued to Mr. Drury, as registered agent for TTI, an information request pursuant to Section 104(e) of CERCLA, 42 U.S.C. § 9604(e), ("Drury Information Request") concerning the nature and quantity of hazardous substances at the Site.

46. Mr. Drury responded to the Drury Information Request in a one-paragraph letter in which he acknowledged that he participated in conducting heat treating operations at the Site, but failed to answer most of the questions in the Drury Information Request.

47. Specifically, Mr. Drury failed to provide: specific dates that he worked at the Site, the capacity in which he worked at the Site, an explanation regarding whether his job at the Site involved dealing with hazardous substances in any way, an explanation regarding who at TTI handled hazardous substances, details relating to when and how he divested himself of his interest in TTI, and information regarding Site ownership while TTI operated its metals heat treating business.

48. Because Mr. Drury's response was deficient, on September 27, 2005, EPA, through Mr. William Messenger, Chief, Emergency Enforcement Services Section, Region 5, issued a second information request pursuant to Section 104(e) of CERCLA, 42 U.S.C. § 9604(e), ("Drury Second Information Request") concerning the nature and quantity of hazardous substances at the Site to Mr. Drury.

49. The Drury Second Information Request was sent by certified mail and was returned as unclaimed after three delivery attempts.

50. On January 15, 2008, the Drury Second Information Request was hand-delivered to Mr. Drury at the same mailing address.

51. To date, Mr. Drury has failed to respond to the Drury Second Information Request at all, or present any basis for his failure to respond.

## FIRST CLAIM FOR RELIEF (CERCLA § 107)

52. Paragraphs 1 to 51 are realleged and incorporated herein by reference.

53. Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides, in pertinent part:

   (1) the owner and operator of a vessel or a facility,
   (2) any person who at the time of disposal of any hazardous substances owned or operated any facility at which such hazardous substances were disposed. . . shall be liable for–
   (A) all costs of removal or remedial action incurred by the United States Government or a State. . . not inconsistent with the national contingency plan. . .

54. Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), provides, in pertinent part: "In any such action [for recovery of costs]. . ., the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions seeking to recover further response costs or damages."

55. Mr. Clark was an operator of the Site at the time of disposal of hazardous substances within the meaning of Sections 101(20) of CERCLA, 42 U.S.C. § 9601(20), and Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

56. Mr. Clark is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

57. The Site is a "facility" within the meaning of Sections 101(9) and 107(a) of CERCLA, 42 U.S.C. §§ 9601(9) and 9607(a).

58. There has been a release or threatened release, within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22), of hazardous substances at or from the Site, including releases or threatened releases of barium, cadmium, chromium, lead, cyanide, PCBs, and corrosive and caustic liquids, among other hazardous substances.

59. In response to the release or threat of release of hazardous substances at the Site, the United States has taken response actions at the Site within the meaning of Section 101(25) of CERCLA, 42 U.S.C. § 9601(25), and has incurred response costs in connection with taking those response actions. Additional response costs have been and continue to be incurred, including enforcement costs.

60. The response actions undertaken by the United States at the Site, and the costs incurred incident to these actions, are not inconsistent with the National Contingency Plan, promulgated under Section 105(a) of CERCLA, 42. U.S.C. § 9605(a), and codified at 40 C.F.R. Part 300, as amended.

61. Mr. Clark is jointly and severally liable to the United States pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), for all un-reimbursed costs incurred, and to be incurred, by the United States in connection with the Site, including enforcement costs and prejudgment interest on such costs.

62. Pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), the United States is entitled to a declaratory judgment that Mr. Clark is jointly and severally liable for future response costs that the United States may incur in connection with the Site.

### SECOND CLAIM FOR RELIEF (CERCLA § 104(e))

63. Paragraphs 1 to 62 are realleged and incorporated herein by reference.

64. Section 104(e)(1), 42 U.S.C. § 9604(e)(1), provides, in pertinent part:

> Any officer, employee, or representative of the President, duly designated by the President, is authorized to take action under [Section 104(e)(2)]. . . at a vessel, facility, establishment, place, property or location. . . for the purposes of determining the need for response, or choosing or taking any response action under this subchapter, or otherwise enforcing the provisions of this subchapter.

65. The President's authority under Section 104(e) of CERCLA, 42 U.S.C. § 9604(e), has been lawfully delegated to EPA. *See* Exec. Order No. 12,580, 52 Fed. Reg. 2,923 (1987).

66. Section 104(e)(2) of CERCLA, 42 U.S.C. § 9604(e)(2), then provides in pertinent part:

> Any officer, employee, or representative [of the President, duly designated by the President,] . . . may require any person who has or may have information relevant to any of the following to furnish, upon reasonable notice, information or documents relating to such matter:
>     (A) The identification, nature, and quantity of materials which have been or are generated, treated, stored, or disposed of at a vessel or facility or transported to a vessel or facility.

      (B) The nature or extent of a release or threatened release of a hazardous substance or pollutant or contaminant at or from a vessel or facility.
      (C) Information relating to the ability of a person to pay for or to perform a cleanup.

67. Section 104(e)(5)(B) of CERCLA, 42 U.S.C. § 9604(e)(5)(B), further provides that:

> The President may ask the Attorney General to commence a civil action to compel compliance with a request or order [where a respondent does not comply with any request made under Section 104(e)(2)]. Where there is a reasonable basis to believe there may be a release or threat of a release of a hazardous substance or pollutant or contaminant, the court shall take the following actions:
>
> \*\*\*
>
> (ii) In the case of information or document requests or orders, the court shall enjoin interference with such information or document requests or orders or direct compliance with the requests or orders to provide such information or documents unless under the circumstances of the case the demand for information or documents is arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the law.

68. Pursuant to Section 104(e)(5)(B)(ii) of CERCLA, 42 U.S.C. § 9604(e)(5)(B)(ii), as amended by the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, and the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701, 69 Fed. Reg. 7121-7127 (February 13, 2004), the court may assess, against any person who unreasonably fails to comply with the provisions of Section 104(e)(2) of CERCLA, a civil penalty of up to $32,500 for each day of noncompliance on and subsequent to March 15, 2004.

69. Ms. Linda M. Nachowicz, who issued the Clark Information Request and Drury Information Request, is an officer, employee or representative of the United States, within the meaning of Section 104(e)(2) of CERCLA, 42 U.S.C. § 9604(e)(2).

70. Mr. William Messenger, who issued the Drury Second Information Request, is an officer, employee or representative of the United States, within the meaning of Section 104(e)(2) of CERCLA, 42 U.S.C. § 9604(e)(2).

71. The Clark Information Request was sent to Mr. Clark for purposes of taking response actions at the Site, recovering Site response costs, and otherwise enforcing the provisions of Section 107 of CERLCA, 42 U.S.C. § 9607.

72. The Drury Information Request and Drury Second Information Request were sent to Mr. Drury for purposes of taking response actions at the Site, recovering Site response costs, and otherwise enforcing the provisions of Section 107 of CERCLA, 42 U.S.C. § 9607.

73. EPA's Clark Information Request, Drury Information Request, and Drury Second Information Request sought information relating to one or more of the categories set forth in Section 104(e)(2)(A)-(C) of CERCLA, 42 U.S.C. § 9604(e)(2)(A)-(C), and specifically sought to obtain, *inter alia*, information regarding the disposal and release or threat of release of hazardous substances at the Site and the ownership and operation of the Site.

74. Mr. Clark unreasonably failed to comply with EPA's Clark Information Request by failing to provide any information, in a timely manner or otherwise.

75. Mr. Drury unreasonably failed to comply with EPA's Drury Information Request by failing to provide sufficient information.

76. Mr. Drury unreasonably failed to comply with EPA's Drury Second Information Request by failing to provide any information, in a timely manner or otherwise.

77. Pursuant to Section 104(e)(5)(B) of CERCLA, 42 U.S.C. § 9604(e)(5)(B), the United States is entitled to injunctive relief directing Mr. Clark to provide all the information sought in the Clark Information Request, and to pay civil penalties for his unreasonable failure to comply.

78. Pursuant to Section 104(e)(5)(B) of CERCLA, 42 U.S.C. § 9604(e)(5)(B), the United States is entitled to injunctive relief directing Mr. Drury to provide all the information sought in the Drury Information Request and Drury Second Information Request, and to pay civil penalties for his unreasonable failure to comply.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, the United States of America, respectfully requests that the Court:

1. Enter judgment against Mr. Clark jointly and severally for response costs incurred or to be incurred by the United States in connection with the Site, with interest thereon;

2. Issue an order compelling Mr. Clark to comply with the Clark Information Request by responding to each request for information and documents, fully and completely by a date specified in the Court's Order;

3. Issue an order compelling Mr. Drury to comply with the Drury Information Request and Drury Second Information Request by responding to each request for information and documents, fully and completely by a date specified in the Court's Order;

4. Assess against Mr. Clark, and in favor of the United States, a civil penalty in an amount not to exceed $32,500 per day for each day from the date on which Mr. Clark's response was due until the date on which Mr. Clark provides a full and complete response to the Clark Information Request;

5. Assess against Mr. Drury, and in favor of the United States, a civil penalty in an amount not to exceed $32,500 per day for each day from the date on which the Drury Second Information Request response was due until the date on which Mr. Drury provides a full and complete response to the Drury Information Request and Drury Second Information Request;

6. Award the United States its costs of bringing this action; and

7.  Award other relief as the Court deems just and proper.

                                Respectfully submitted,

                                FOR THE UNITED STATES

                                W. BENJAMIN FISHEROW
                                Deputy Section Chief
                                Environmental Enforcement Section
                                Environment & Natural Resources Division
                                United States Department of Justice


                                ALISON C. McGREGOR
                                Trial Attorney
                                Environmental Enforcement Section
                                Environment & Natural Resources Division
                                U.S. Department of Justice
                                P.O. Box 7611
                                Washington, D.C. 20044-7611
                                Tel: (202) 514-1491
                                Fax: (202) 616-6584
                                alison.mcgregor@usdoj.gov

PATRICK J. FITZGERALD
United States Attorney


By: s/ Jonathan C. Haile
   JONATHAN C. HAILE
   Assistant United States Attorney
   219 South Dearborn Street
   Chicago, Illinois 60604
   (312) 886-2055
   jonathan.haile@usdoj.gov

OF COUNSEL:

Randa Bishlawi
Office of Regional Counsel
U.S. Environmental Protection Agency
Region 5 (C-14J)
77 West Jackson Blvd.
Chicago, Illinois 60604
(312) 886-0510
bishlawi.randa@epamail.epa.gov